UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CYNTHIA W. BOWIE                                              CIVIL ACTION

VERSUS                                                        NUMBER: 13-5698

AMERICAN SECURITY INSURANCE                                   SECTION: "S"(5)
COMPANY, ET AL.


## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Partial Summary Judgment, which was referred to the undersigned United States Magistrate Judge by the District Judge to conduct a hearing and to submit a Report and Recommendation pursuant to Title 28 U.S.C. § 636. (Rec. doc. 19, 27). The Court has reviewed the record, including the parties' pleadings and attachments thereto, and has conducted a hearing, at which the parties, through counsel, were provided the opportunity to further argue their positions. (Rec. docs. 19, 25, 34, 39). Considering all of the foregoing, the Court will recommend that the Motion be **GRANTED**, for the following reasons.

I.   **FACTS OF THE CASE**

This is one of many cases now pending in this District arising out of flood damage caused by Hurricane Isaac, which struck southeast Louisiana on August 29, 2012. This particular action arises out of a flood insurance claim made by homeowner and Plaintiff, Cynthia Bowie ("Bowie"), for damages sustained to her home as a result of Hurricane Isaac.[1] Defendant, Fidelity National Indemnity Insurance Company ("Fidelity"), issued a Standard Flood Insurance Policy ("SFIP") to Bowie as the named insured for the property located at 2808 Yorktown Dr., La Place, Louisiana (the "Property") with policy effective dates of May 31, 2012 to May 31, 2013 and with Coverage A (building) policy limits of $239,700.00 and a deductible of $1,000. (Rec. doc. 11, ¶ 32.)  Fidelity is a write-your-own ("WYO") program carrier participating in the National Flood Insurance Program ("NFIP").

The parties agree that, following the storm, Bowie submitted a claim for flood damages to Fidelity, which sent an independent adjuster, Rick Preston of Colonial Claims Corporation, to Bowie's home to inspect the property and prepare an estimate of damages. The adjustment process involving the building claim[2] ultimately resulted in numerous estimates and proofs of loss executed by the adjuster and signed by Bowie, resulting in numerous payments on the building claim totaling $57,782.71 (including a $5,000 advance payment). *See* Letter from Fidelity to Cynthia Bowie, dated Feb. 5, 2013 (Rec. doc. 19-7).

---

[1]  The suit originally included a wind-damage claim against Plaintiff's wind carrier, American Security Insurance Company. That party and the claims against it have been dismissed. (Rec. doc. 16).
[2]  There was also a contents claim, which is not the subject of this lawsuit.

At some point, apparently dissatisfied with the estimates created by Fidelity's appointed adjuster, Bowie hired her own public adjuster, Michael Michio, who eventually prepared an estimate of damages totaling $147,817.00, an amount substantially higher than the amount estimated by Preston.  (Rec. doc. 19-10).  This second estimate from Preston – and the additional damages claimed therein – is at the heart of this litigation.

## II.    THE PRESENT MOTION

Bowie now moves for partial summary judgment, asking this Court to "interpret the insurance policy to determine whether Ms. Bowie may pursue a claim under the policy on an actual cash value basis, versus on a replacement cost basis as asserted by Fidelity." (Rec. doc. 19-1, p. 2).  Simply, she asks the Court to determine, as a matter of law, that the language of the Policy allows her to elect to proceed in this lawsuit as an actual cash value ("ACV") claimant, rather than being forced to proceed as a claimant seeking replacement cost value ("RCV").

Fidelity responds in opposition, raising a single, specific argument against Bowie's Motion.[3]  Fidelity argues that because Bowie "failed to timely notify Fidelity of her decision to elect to proceed on an Actual Cash Value basis settlement within 180 days of the loss as required by Article VII(V)(2)(d)," she may only proceed herein as an RCV claimant.  (Rec. doc. 25, p. 2).  In its Opposition Memorandum, Fidelity concedes that "the SFIP provides the

---

[3] Fidelity's Opposition Memorandum also sets forth an argument concerning the alleged impropriety of a claim for declaratory relief by Bowie, despite Bowie not making such a claim in her Motion.  Because she included such a claim in her original Complaint and because she asks in her Motion that the Court "declare her rights" to proceed as an ACV claimant, Fidelity argues that _if_ she is seeking declaratory relief in the Motion, such relief would be "redundant" of Bowie's breach of contract claim.  While Bowie's Complaint does purport to seek some form of declaratory relief, her present Motion does not.  As such, the Court will forego any discussion herein regarding the appropriateness of such a claim.

insured the option to elect to make a claim for dwelling damages on an actual cash value basis," but claims the policy language that creates the right to make that election requires "unequivocally" that the insured notify the insurer of that election within 180 days of the loss.  (*Id.* at pp. 9-10).

Accordingly, the outcome of this Motion turns solely on the meaning of Article VII(V)(2) of the SFIP, particularly paragraphs (c) and (d).

### III.   LAW AND ANALYSIS

#### A.  Standard of Review

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  It is well established, and no party herein disputes, that the interpretation of a contract, including the SFIP, is a question of law that properly may be determined on a motion for summary judgment.  *See, e.g.*, *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.), *cert. denied*, 531 U.S. 927 (2000); *Sodowski v. NFIP*, 834 F.2d 653 (7th Cir. 1987), *cert. denied*, 486 U.S. 1043 (1988); *Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131 (1st Cir. 1984); *Smoak v. Ind. Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C. 1994), *vacated on other grounds*, 180 F.3d 172 (4th Cir. 1999); *Rockland Fed. Credit Union v. Witt*, 853 F.Supp. 14 (D.Mass. 1994).

> Indeed, when the contract is unambiguous on its face, the operation of the parol-evidence rule will preclude the introduction of outside evidence to dispute its terms and summary judgment is particularly appropriate.  Thus, when there is no genuine issue as to the meaning of a contract, the mere assertion that ambiguity or divergent intent exists will not prevent summary judgment from being entered.

4

10B Wright & Miller, Federal Practice & Procedure, § 2730.1 (3d ed.)

Accordingly, as this Motion solely concerns the interpretation of a provision of the SFIP, it is ripe for decision by the Court.

### B. Analysis

The SFIP issued by Fidelity and all disputes arising from the handling of any claim under it are governed by the flood insurance regulations issued by the Federal Emergency Management Agency ("FEMA"), the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*) and federal common law.  See 44 C.F.R. Pt. 61, App. A(1), Art. IX.  Any interpretation of those regulations by FEMA also governs, as long as that interpretation is not inconsistent with the regulations or plainly erroneous.  *Stevens v. Allstate Ins. Co.*, ____ F.Supp.2d ____, 2014 WL 1779478, at *3 (E.D. La. May 5, 2014)(citing *Worthen v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 463 Fed.Appx. 422, 426 (5th Cir. 2012)).  SFIPs must be strictly construed and enforced.  *Id.* (citing *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998)).

"Although federal law governs SFIPs, 'general principles of state insurance law may be useful' in interpreting them."  *Id.* (quoting *Worthen*, at 425).  Those general principles include:

> (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally

5

>> construed in the insured's favor to promote the policy's objective of providing coverage.

*Id.* (quoting *Worthen*, at 425-26).

In addition to these principles, a court interpreting the language of the SFIP should be further guided by the well-established notion that words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024, 1028-29. Likewise, an insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La. 4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 4 (La. 1/15/02), 805 So.2d 1134, 1138; *Peterson*, 729 So.2d at 1029.

Against these widely accepted precepts, the Court turns to the language at issue in this Motion.

It is undisputed in this case that Bowie is <u>eligible</u> to proceed under the Replacement Cost Loss Settlement provisions of the SFIP; the question is whether she <u>must</u> so proceed. In *Stevens v. Allstate*, District Judge Fallon recently observed that this particular provision

6

"is something of a misnomer in that it incorporates both a 'replacement cost' approach and an 'actual cash value' approach in settling claims." *Id.*, at *3. The relevant language of the Replacement Cost Loss Settlement provision is as follows:

> The following loss settlement conditions apply to a single-family dwelling . . .
> (a) [The insurer] will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
> (1) The building limit of liability ...;
> (2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; or
> (3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.
> . . . .
> (c) When the full cost of repair or replacement is more than $1,000, or more than 5% of the whole amount of insurance that applies to the dwelling, [the insurer] will not be liable for any loss under [subsection (a) ] above ... unless and until actual repair or replacement is completed.
>
> (d) [The insured] may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. [The insured] may then make claim for any additional liability according to [subsections (a) and (c) ] above, provided [the insured] notif[ies the insurer] of [their] intent to do so within 180 days after the date of loss.

In *Stevens*, as in this case, the insurer argued that the insured was limited to recovery under subsection (a) above, *i.e.*, the "pure" RCV loss settlement conditions. In *Stevens*, that insurer, in arguing for the application of subsection (a), simply ignored the other applicable subsections, (c) and (d). *Id.*, at *4. Here, Fidelity acknowledges those subsections and even concedes that they could have applied at one point to this case, but it makes a novel

argument not raised by Allstate in the *Stevens* case[4] – that the language of subsection (d) imposes upon Bowie a requirement that she "notify [Fidelity] of her intent to [proceed as an ACV claimant] within 180 days of the loss." (Rec. doc. 25, p. 10).

The outcome of this Motion depends, therefore, upon whether subsection (d) requires an insured (1) to notify the insurer of its election to proceed on an ACV basis and (2) make that notification within 180 of the loss. This Court believes that no reasonable person could read subsection (d) to impose such requirements.

In brief and at oral argument, Fidelity has been unable to point to a single authority – case, statute, regulation or FEMA guidance – that supports its reading of subsection (d). That is unsurprising to the Court, given the plain language of the provision. In fact, the *Stevens* Court's interpretation of that provision supports this Court's conclusion that the 180-day deadline set forth in subsection (d) actually applies to a different election available to the insured, namely an election to seek from the insurer payment of recoverable depreciation costs withheld by the insurer only after the insured had earlier elected to proceed on an ACV basis.

Bowie relies rather heavily on the *Stevens* case in support of her position herein. In response, Fidelity suggests that because "[t]he *Stevens* Court did not address Article VII(V)(2)(d)'s time requirement . . . it is not helpful to Plaintiff's argument." (Rec. doc. 25, p. 10). But, the *Stevens* Court did address the time requirement of subsection (d) and it did so in way that thoroughly undermines the strained interpretation offered herein by Fidelity.

---

[4] Obviously, Fidelity and Allstate are wholly different entities. However, the law firm representing Fidelity in this matter also represented, and filed briefs on behalf of, Allstate in *Stevens*.

Specifically, the *Stevens* Court noted:

> Under subsection (d), an insured may make a claim and receive the actual cash value of the damaged property immediately after the damage occurs. If the insured does not intend to repair or replace that property, the insurer's liability will have been entirely resolved. If the insured does intend to repair or replace it (<u>and notifies the insurer of that intent within 180 days</u> after the damage occurs), the insured may then make <u>another</u> claim for the difference between the actual cash value, under subsection (d), and the repair or replacement cost, under subsection (a). Although Allstate may later become liable to the Stevens for the replacement cost, it is currently only liable to them for the actual cash value.

*Stevens*, 2014 WL 1779478, at *4. There are two particularly important observations here.

First, dispositive of this Motion is that the 180-day time limitation applies to a <u>second</u> election by the insured to seek payment of any recoverable depreciation that may have been withheld by the insurer. Such a "holdback" of recoverable depreciation would only occur pursuant to an ACV payment by the insurer after the insured made its <u>first</u> election under subsection (d) to "disregard" the RCV loss settlement provisions and proceed on an ACV basis. Second, unless and until the insured actually completes repairs, the insurer is "only liable to [the insured] for the actual cash value" of the claim. *Id.*

Far from ignoring the "time requirement" of subsection (d) as Fidelity suggests, the *Stevens* Court actually interpreted it to mean exactly what Bowie suggests it means in her Motion. This Court cannot help but agree with the *Stevens* Court's interpretation of subsection (d) and in fact can conceive of no other interpretation, including Fidelity's, that

9

would not amount to a "perversion of the words" of the provision. *Succession of Fannaly*, 805 So.2d at 1138.

Accordingly, Bowie is entitled to proceed in this matter on an ACV basis.

### IV. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment be **GRANTED** and that Plaintiff be allowed to proceed in this matter on an ACV basis.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in the Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

New Orleans, Louisiana, this  20th  day of         June        , 2014.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE